## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 19-53-DLB-CJS

DAVID BELL and CINDY WILDER BELL                                    PLAINTIFFS


v.                          **MEMORANDUM OPINION AND ORDER**


KOKOSING INDUSTRIAL, INC.                                          DEFENDANT

* * * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court upon four pending motions made by both parties. Plaintiffs have filed a Motion to Exclude Expert Testimony (Doc. # 80), a Motion for Summary Judgment (Doc. # 81), and a Motion to Strike (Doc. # 95).  Defendants have filed a Motion for Summary Judgment (Doc. # 82).  All pending Motions have been fully briefed (Docs. # 83, 84, 85, 86, 87, 88, 96, and 97), and are thus ripe for the Court's review.  The Court has reviewed the Motions and associated filings.

For the reasons stated herein, Plaintiffs' Motion to Exclude (Doc. # 80) is **denied without prejudice**, Plaintiffs' Motion for Summary Judgment (Doc. # 81) is **granted in part and denied in part**, Plaintiffs' Motion to Strike (Doc. # 95) is **denied**, and Defendant's Motion for Summary Judgment (Doc. # 82) is **granted in part and denied in part.**

## II.     FACTUAL AND PROCEDURAL BACKGROUND

David and Cindy Bell ("the Bells") are residents of Villa Hills, in Kenton County, Kentucky, where they own a one-acre tract of property situated on a wide bend in the

Ohio River.  (Doc. # 27 ¶¶ 45-46).  Before 2017, the back side of the Bells' property sloped toward the river and was at one point within the river's 100-year-floodplain.  (*Id.* ¶ 46).  Even though Villa Hills' zoning regulations did not allow it, the Bells one day hoped to subdivide their property and sell the land for residential development. (*Id.* ¶ 49).  In 2017, the Bells believed that Villa Hills would eventually change its zoning regulations, and in the meantime, they sought to use their property to create a campground, an organic garden, and a boat ramp for usage by members of their church. (*Id.* ¶¶ 50-51).  However, the property's slope along the riverbank was too steep for the campground and too steep to be eventually subdivided, so the Bells sought to fill in and elevate the land to create a larger, more level yard.  (*Id.*).  In addition to allowing for development, filling in the property and raising the elevation would have reduced the property's flooding risk.  (*Id.*).  So, the Bells applied for and received permits from local, state, and federal authorities to fill in their property, raise the elevation, and build a boat ramp to the river.  (*Id.* ¶ 53).

In July 2017, representatives of Kokosing Industrial, Inc. ("Kokosing") approached the Bells at their home and offered to transport and dump fill material onto the Bells' property.  (*Id.* ¶ 59).  Kokosing told the Bells that in exchange for the rights to dump non-contaminated fill material on the Bells' property, Kokosing would bring the fill material to the property, spread it on the land, and provide the fill material to the Bells free of charge. (*Id.*).  The fill material that Kokosing would dump onto the Bells' property was to come from a City of Cincinnati sewer construction project for which Kokosing was the general contractor.  (*Id.* ¶ 35).  Upon reaching an agreement, Kokosing presented the Bells with a contract entitled "Waste Agreement."  (*Id.* ¶ 82).  The Bells were not represented by legal counsel.  (*Id.* ¶ 73).  Mr. Bell marked up the contract, striking out various clauses

and specific words, in addition to writing "[n]o contaminated material of any type" at the bottom of one section.  (*Id.* ¶ 88).  Mr. Bell then signed the contract and delivered it to Kokosing without retaining a copy of the contract.  (*Id.* ¶ 89).  The Bells never received a fully signed copy of the contract until July 2018 (*id.* ¶¶ 90-91), but Kokosing (through its subcontractor, Ashcraft) began dumping fill material on the Bells' property in August 2017.  (*Id.* ¶ 103).

According to the Bells, the copy of the contract that Kokosing signed is not the same as the contract signed by David Bell.  (*Id.* ¶ 93).  In July 2018, when the Bells received a copy of the contract, they noticed that Mr. Bell's handwritten notation prohibiting contaminated material had been removed, and an additional paragraph waiving liability with respect to the Metropolitan Sewer District had been added.  (*Id.*).  While Mr. Bell's signature remained on the document, the Bells believe that Kokosing removed the signature page signed by Mr. Bell from the notated contract and attached it to a clean copy without Mr. Bell's notations.  (*Id.*).

Mr. Bell's notation about contaminated material would turn out to be extremely noteworthy.  The fill material that Kokosing began dumping on the Bells' property was from an area known as "Site 20" within the Cincinnati sewer construction project.  (*Id.* ¶ 111; Doc. # 81-1 at 4).  Site 20 was a large parcel of land within the project, located just off the Western Hills Viaduct, and which also contained the former location of a McDonald's restaurant at 2321 Beekman Street.  (Doc. # 27 ¶ 112).  The McDonald's location had been built on a lot backfilled with black foundry sand, a waste byproduct dumped there at some point by the former Lunkenheimer Valve Company, which had

previously been located a few blocks away at 1519 Tremont Street.[1]  (*Id.* ¶ 16 n.1 and

121).  For many years, the Lunkenheimer Company dumped black foundry sand on land

that would eventually house the McDonald's building, and which would later be labeled

Site 20 in the City's 2017 sewer construction project.  (*Id.* ¶ 121).  Black foundry sand

contains contaminants such as heavy metals and polyaromatic hydrocarbons ("PAHs"),

which are toxic and carcinogenic to humans.  (*Id.* ¶ 124).  The Site 20 site held large

amounts of black foundry sand mixed into the natural earth, which had been present for

many years.  (*Id.* ¶ 123; *supra* note 1).

Through a subcontractor, Kokosing began transporting and dumping the fill

material from Site 20 onto the Bells' property in August 2017.  (*Id.* ¶ 103).  In October

2017, after many loads had been taken to the Bells' property, Kokosing excavators at Site

20 noticed a strong petroleum smell coming from the dirt.  (*Id.* ¶ 141).  Kokosing contacted

an environmental consulting firm, which initially reported that the soil was not

contaminated.  (*Id.* ¶ 142; Doc. # 82 at 7-8).  Five days later, after a geologist from the

consulting firm visited Site 20 in person, he notified Kokosing that the fill material was

black foundry sand, and Kokosing stopped excavation.  (Docs. # 27 ¶ 154 and 82 at 8).

In the next few days, Kokosing was notified by the consulting firm that the black foundry

sand contained contaminated material and was improper for placement on the Bells'

residential property.  (Docs. # 27 ¶ 160 and 82 at 8).

Around the same time, the US Army Corps of Engineers was investigating the

Bells' property, and a Coast Guard vessel took photographs of a bulldozer pushing the

---

[1]     The Lunkenheimer Valve Company opened in 1862 at the Tremont Street location and shut down operations in 1968.  WestEnder, *A Brief History of the Lunkenheimer Valve Company*, CLARK STREET BLOG (Mar. 11, 2012, 2:36 PM), http://clarkstreetblog.blogspot.com/2012/03/brief-history-of-lunkenheimer-valve.html?showComment=1449990223463#c7629968937305557061.

black fill material toward the riverbank.   (Doc. # 27 ¶ 150).   Soon thereafter, representatives from the Army Corps of Engineers and the Kentucky Division of Water came to the Bells' home to ask about the fill material.  (Docs. # 81-1 at 11 and  91 at 165-66).  The Bells attest that they were not able to get testing results from Kokosing (Docs. # 27 ¶ 173; 81-1 at 15; 91 at 104-05), and so they had their own testing completed on the fill material in cooperation with the Kentucky officials.  (Docs. # 27 at 173 and 91 at 105). The Bells' test showed high contamination levels of heavy metals and PAHs.  (Doc. # 27 ¶ 192).

The Bells provided those test results to the Kentucky Department of Water and the Kentucky Division of Environmental Protection, and then, the state government ordered its own testing of the fill material.  (*Id.* ¶ 118; Doc. # 81-1 at 6).   The Kentucky state government's test showed the same results as the Bells' test: high levels of heavy metals and PAHs, meaning that the fill material was severely contaminated and improper for disposal on the Bells' residential property.  (Doc. # 27 ¶ 192).  Thereafter, the Kentucky state government issued a Notice of Violation to the Bells and Kokosing, in addition to other involved parties, for dumping the contaminated material in the Bells' yard on the Ohio River floodplain.   (*Id.* ¶ 120).   The Notice, issued in early 2018, required "all responsible parties . . . to take expeditious action to mitigate the contaminants that have been released onto the residential property."  (Doc. # 81-1 at 7, Exhs. 21 and 22) (original in all caps).

The Bells filed this lawsuit in April 2019, against Kokosing, the City of Cincinnati, the Metropolitan Sewer District, Ashcraft Sand and Gravel (Kokosing's transporting subcontractor), and ATC Group Services (Kokosing's environmental consultant).  (*See*

*generally* Doc. # 27).  At the time of the lawsuit's filing, no remediation actions had been taken to remove the contaminated soil from the Bells' property.  (*Id.* ¶ 211).  In July 2020, the Court dismissed all claims against the City of Cincinnati, the Metropolitan Sewer District, Ashcraft Sand and Gravel, and ATC Group Services, in addition to several claims against Kokosing.  (*See generally* Doc. # 59).  In that Order, the Court noted that "the Defendants [had] been involved in ongoing negotiations with the Bells and [the Kentucky state government] about how to address the contamination."  (*Id.* at 10).

Since then, remediation appears to have been completed.  (Doc. # 81-1 at 7).  In July 2020, the Bells and Kokosing entered into a second contract regarding remediation efforts.  (Doc. # 82 at 9).  Kokosing retained ATC to craft a remediation plan (*id.*), and at Kokosing's own expense, a third-party contractor "[dug] out most of the black sand and regrade[d] the Bells' property."  (Doc. # 81-1 at 7).  A Kentucky Department of Environmental Protection project manager supervised the remediation.  (Doc. # 82 at 9). Under the remediation plan, Kokosing's contractor removed the contaminated fill material, and placed a three-feet-deep "soil cap" consisting of two feet of clay and one foot of topsoil on top of the residual contaminated matter that had contacted the previous earth. [2]  (*Id;* Doc. # 81-1 at 7).  According to the Bells, the "soil cap" cannot be disturbed at all without prior approval from the Kentucky Division of Environmental Protection, which will also require the Bells to record a restrictive covenant in their property's chain of title.  (Doc. # 81-1 at 7).  The Bells further state that the restrictive covenant will restrict anyone from "ever be[ing] able to build or live in an inhabitable building in the area," which has "stigmatized and damaged . . . the property" forever.  (*Id.*).  The Bells' claimed damage to

---

[2]      Kokosing refers to this filling as a "cover," but being synonymous with "cap," the Court understands the parties to be referring to the same thing.

the property has also ostensibly paused their plans for a campground, organic garden, and boat ramp for usage by members of their church.  (*See* Doc. # 27 ¶¶ 51-52).

After the Court's ruling on Motions to Dismiss (Doc. # 59), the remaining claims in the case are all against Kokosing: (1) breach of contract, (2) fraudulent misrepresentation, (3) negligence *per se*, and (4) intentional trespass to property.  The Court also declined to dismiss the Bells' claims for declaratory and injunctive relief, in addition to determining that Kentucky substantive law applies to all claims in the case.  (*Id.* at 77 and 27-29).

## III.   ANALYSIS

### A.   Cross-Motions for Summary Judgment (Docs. # 81 and 82)

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, no genuine dispute exists where *no* reasonable jury could return a verdict for the nonmoving party.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Lastly, the Court must draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When deciding cross-motions for summary judgment, the standard of review remains the same, as "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose

motion is under consideration." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  The Court will accordingly address both parties' motions individually and in turn.

## 1.     The Bells' Motion for Summary Judgment (Doc. # 81)

The Bells have moved for summary judgment with respect to liability on all four substantive counts, and they request a jury trial on damages, in addition to a 45-day reopening of discovery for determining damages.  (Doc. # 81 at 1).  The Bells' Motion does not address the claims for declaratory and injunctive relief.  (*See id.*).  After reviewing the pleadings relating to the Bells' Motion and the record evidence, the Court finds that genuine issues of material fact exist with respect to some of the claims, and the Motion is **granted in part and denied in part** for the foregoing reasons.

As a threshold matter, the Court notes that in Kokosing's Response to the Bells' Motion for Summary Judgment, it has raised objections to exhibits provided by the Bells in support of their Motion.  (Doc. # 83 at 3).  More specifically, Kokosing takes issue with the lack of authentication provided by the Bells in support of their exhibits, writing that the Bells' "scant support is not properly before the Court because it was never authenticated." (*Id.* at 2).  Unfortunately for Kokosing, its argument is unavailing.

Evidence presented on summary judgment does not have to be admitted, but merely *available* for potential admission at trial.[3]  *See* Fed. R. Civ. P. 56(c)(2). Accordingly, a proper objection to evidence on summary judgment is made by arguing

---

[3]     *See also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2721 (4th ed. 2021) ("The court may consider any material that would be admissible or usable at trial, although the opposing party may specifically object on the ground that the cited materials cannot be presented in a form that would be admissible in evidence. As Judge Aldrich has stated, Rule 56 "is an enlarging provision as to what may be considered, not a restriction.") (quoting *Yong Hong Keung v. Dulles*, 127 F.Supp. 252, 252 (D. Mass. 1954)).

that "a fact cannot be presented in a *form* that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2) (emphasis added).  The Sixth Circuit explained this concept well in a case cited by Kokosing in its Response (Doc. # 83 at 3): Rule 56 "requires a plaintiff's evidence to be admissible *only as to its contents and not as to its form*, as long as the plaintiff can proffer that it will be produced in an admissible form."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 423 (6th Cir. 2021) (emphasis added).  Authentication is a classic issue of form, not content, and accordingly, "Rule 56 no longer draws a clear distinction between authenticated and unauthenticated evidence for purposes of summary judgment." *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017).  Kokosing's objections to the evidence cited by the Bells is thus overruled to the extent that it seeks exclusion of certain evidence at the summary judgment stage.

### a.    Fraudulent Misrepresentation

Under Kentucky law, fraudulent misrepresentation is comprised of six elements:

(1)    The defendant made a material representation to the plaintiff;

(2)    The representation was false;

(3)    The defendant knew the representation to be false or made it with reckless disregard for its truth or falsity;

(4)    The defendant intended to induce the plaintiff to act upon the misrepresentation;

(5)    The plaintiff reasonably relied upon the misrepresentation; and

(6)    The misrepresentation caused injury to the plaintiff.

*Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729, 747 (Ky. 2011).  The Bells' fraudulent misrepresentation claim rests in Kokosing's alleged misrepresentation to the Bells regarding the fill material's contamination status, and Kokosing's reasons for making such a misrepresentation.  (Doc. # 81-1 at 23).  According to the Bells, Kokosing's motive for inducing the Bells to take the fill material was to save money, as it would have been

9

more expensive for Kokosing to transport the fill material to a waste facility and pay tipping fees, while the Bells took the fill for free.  (*Id.*).  In response, Kokosing asserts that the Bells' theory of motive is "based on nothing more than unauthenticated invoices, misinterpretation of the applicable contract and mathematical equations performed in the footnotes of the motion."  (Doc. # 83 at 16).  Kokosing has provided its own evidence regarding fee arrangements between Kokosing and other waste disposal entities to refute the Bells' arguments.  (*Id.*).

Upon review of the record, the Court concludes that genuine issues of material fact exist with respect to the fraudulent misrepresentation claim.  The Bells claim that Kokosing had a financial motive for its misrepresentations, which speaks to intent (Doc. # 81-1 at 23), and Kokosing claims that it did not, and that the misrepresentations were merely mistakes without fraudulent intent.  (Doc. # 83 at 16).  In the Sixth Circuit, "claims involving proof of a defendant's intent seldom lend themselves to summary disposition [except for] when the evidence is so one-sided that no reasonable person could decide the contrary."  *West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease Litig.)*, 727 F.3d 473, 484 (6th Cir. 2013) (internal quotations omitted).  Here, after construing inferences in favor of the nonmoving party Kokosing, the Court concludes that a reasonable jury could find for either party on this claim, and summary judgment in favor of the Bells is **denied** on this claim.

### b.    Negligence *Per Se*

Negligence *per se* refers to a negligence claim in which a statutory standard of care replaces the traditional common law standard of care.  *Pile v. City of Brandenburg*, 215 S.W.2d 36, 41 (Ky. 2005).  In Kentucky, negligence *per se* is codified at K.R.S.

§ 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  Ky. Rev. Stat. § 446.070.  Kentucky courts have interpreted KRS § 446.070 to require three elements in a negligence *per se* claim: (1) that the underlying statute is criminal in nature without an inclusive civil remedy, (2) that the plaintiff is within the class of persons the statute is intended to protect, and (3) that the plaintiff's injury is the type of injury that the statute was designed to prevent. *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 23-24 (Ky. 2018).

The Bells argue that they are entitled to judgment as a matter of law on this claim due to Kokosing's violation of K.R.S. § 224.40-100 and 401 K.A.R. § 31:031.  (Doc. # 81-1 at 18).  Previously, the Court dismissed the Bells' negligence *per se* claims against all the other defendants after determining that "the purpose of Chapter 224 is 'to provide for the management of solid waste . . . in a manner that will protect the public health and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, and enhance the beauty and quality of our environment.'"  (Doc. # 59 at 56) (quoting *Iles v. Commonwealth*, 320 S.W.3d 107, 115 (Ky. Ct. App. 2010)).  Similarly, the Court determined that 401 K.A.R. § 30:031 "is to 'determin[e] which waste sites or facilities pose a reasonable probability of adverse effects on human health or the environment.'" (*Id.*) (quoting 401 Ky. Admin. Regs. § 30:031).  Accordingly, the Court concluded that the statutes and regulation cited by the Bells "were designed to protect the general public and the environment at large, not specific property owners," meaning that the Bells are not within the class of people that the statutes were intended to protect.  (*Id.* at 57).  The Court also determined that the injury suffered by the Bells was not the type of injury

contemplated by the statutes or regulation, which it noted as "equally fatal" to their negligence *per se* claim. (*Id.*).

The Court granted Motions to Dismiss by other defendants on the negligence *per se* claim, but Kokosing did not move to dismiss the negligence *per se* claim brought against it, and so the claim remained. (*See id.* at 55) (citing Doc. # 38 at 1). Nonetheless, however, the Court unequivocally held that "the Bells cannot use K.R.S. § 224.40-100, 224.1-400, or 401 K.A.R. § 30:031 to bring a negligence per se claim." (*Id.* at 58). In support of their Motion for Summary Judgment, the Bells seek to rehash the Court's previous Order, arguing that the Court relied upon a case distinguishable from the facts at hand. (Doc. # 81-1 at 18). However, the Bells' argument is unavailing, as it is precluded by the law of the case doctrine.

The law of the case doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)). The doctrine generally "precludes a court from reconsideration of issues 'decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.'" *Id.* (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)). As previously stated, the Court held unequivocally that the Bells cannot bring a negligence *per se* claim by the statutes they have cited. Even though the Court declined to dismiss the claim against Kokosing *sua sponte*, the legal determinations made at that stage of the litigation are carried forward by the law of the case doctrine and are equally applicable here. As

such, the Bells are not entitled to judgment as a matter of law on their negligence *per se*

claim, and summary judgment on that claim is **denied**.

**c.     Intentional Trespass to Property**

The Bells have also moved for summary judgment with respect to their intentional

trespass claim against Kokosing.  In Kentucky, "any intended intrusion or encroachment

which is not privileged is actionable" by an intentional trespass claim, and "without regard

for the shortness of the period of the interference, or the absence of pecuniary harm."

*Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 54 (Ky. 2007) (internal quotation

omitted).  Reckless conduct also constitutes intentional trespass.  *Harrod Concrete and*

*Stone Co. v. Crutcher*, 458 S.W.3d 290, 298 (Ky. 2015) (citing *Sandlin v. Webb*, 240

S.W.2d 69 (Ky. 1951)).  The inquiry into whether a trespasser's conduct was intentional

or reckless is done by examining the "intention, or the state of mind, of the trespasser

based  upon  the  circumstances  surrounding  the  trespass  at  the  time  the  trespass

occurred."  *Church and Mullins Corp. v. Bethlehem Mins. Co.*, 887 S.W.2d 321, 324 (Ky.

1992).  Generally, "every trespass is presumed willful [or reckless], with the burden upon

the trespasser to prove his innocence."  *Id.* at 323.

Here, the Bells argue that Kokosing "intentionally or recklessly directed [the hauling

company] to haul contaminated waste to the Bells' property."  (Doc. # 81-1 at 19).  The

Bells have cited deposition testimony to purport that the hauling company's truck drivers

expressed concern about the fill material's contamination status, in addition to purported

misrepresentations from Kokosing about the fill material.  (*Id.* at 20-21).  In the Bells' view,

this evidence demonstrates that Kokosing acted intentionally or recklessly in depositing

the contaminated material on their property, as they only had license to deposit clean

13

material.  (*Id.* at 20).  In response, Kokosing argues that it acted in good faith and on a reasonable mistake, believing genuinely that the fill material was not contaminated.  (Doc. # 83 at 11).  Kokosing refutes the Bells' evidence, writing that even if the truck drivers had complained about the material, "there is no citation to any evidence that Kokosing was made aware of any contamination."  (*Id.* at 12).  However, the Bells directly quote a deposition transcript stating that Alan Girdler, a dispatcher at the hauling company, "picked up the phone, called the superintendent down there and told him, hey the drivers are expressing a little concern here. Are we okay?"  (Doc. # 81-1 at 21) (quoting Girdler Depo. at 26-27).  The "superintendent" to which Mr. Girdler referred, as the Bells explain, was Kokosing's site superintendent, Jon Turton.  (*Id.* at 22).

In short, a dispute of material fact exists as to whether Kokosing knew or should have known that the fill material was contaminated.  While the Bells have stated that a representative of the hauling company notified Kokosing of suspicions (*id.* at 21), Kokosing states that it was not made aware of any contamination.  (Doc. # 83 at 11).  While the Court recognizes that Kokosing may be parsing words as to whether suspicions of contamination are tantamount to actual contamination, the Court nonetheless construes reasonable inferences in Kokosing's favor, and sees plainly that factual evidence is in dispute with respect to Kokosing's state of mind.  Thus, because a defendant's state of mind is a critical element of intentional trespass under Kentucky law, the Court cannot grant the Bells' motion for summary judgment on their intentional trespass claim.  Their motion is therefore **denied**.

14

### d.      Breach of Contract

With respect to the breach of contract claim, the Bells request that the Court grant summary judgment in their favor as to Kokosing's liability and conduct a bench trial to determine damages.   (*Id.*).   In response, Kokosing argues that the Bells have not produced any evidence of contractual damages, which it asserts should preclude judgment as a matter of law.   (Doc. # 83 at 8).

In Kentucky, a breach of contract claim consists of (1) the existence of a contract, (2) a breach of that contract, and (3) damages flowing from the breach.   *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).   As the Bells state and as Kokosing agrees, no dispute exists with respect to whether there is a valid contract in this case.   (Docs. # 81-1 at 16 and 83 at 6).   However, the parties are in dispute as to breach.   The Bells argue that Kokosing breached the contract between the two parties when it arranged for contaminated fill material to be delivered to the Bells' property, and they suffered "contractual damages, including substantial attorney's fees, litigation costs and expenses, and the loss of Kokosing's delivery of 100,000 cubic yards of clean fill for their property."   (Doc. # 81-1 at 17).   Kokosing argues that it did not breach the contract with respect to the amount of fill.   At this stage, the Court is inclined to agree with Kokosing with respect to breach regarding the amount of fill delivered.

In Kentucky, courts are "powerless to interpret a contract contrary to such plain meaning as is discernible from [the] agreement."   *Smithfield Farms, LLC v. Riverside Devs., LLC*, 566 S.W.3d 566, 571 (Ky. Ct. App. 2018) (citing *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006)).   Here, the Waste Agreement entered into by both parties states that the Bells committed "to accepting *as much as* 100,000 cubic yards

of compactible fill and/or broken concrete from [Kokosing]."  (Doc. #81-5 at 2) (emphasis added).  The inclusion of "as much as" shows clearly that the amount of fill delivered could be less than 100,000 cubic yards.  (*Id.*).  Additionally, David Bell crossed out this phrase before signing the contract.  (*Id.*).  It is not necessary for the Court to evaluate the effectiveness of that striking,[4] but between the striking and the unambiguous language, it is clear that material issues of fact exist, and summary judgment in favor of the Bells is not proper on their breach theory relating to the amount of fill provided.

However, the Bells also allege that Kokosing breached the contract with respect to the contract's requirement that "the waste material shall not contain any contaminants as defined by state and/or federal law."  (*Id.*;  Doc. # 81-1 at 16).  Kokosing does not disagree, as it is not in dispute that Kokosing's subcontractors dumped contaminated fill on the Bells' property, and Kokosing does not address that aspect of breach in its Response to the Bells' Motion for Summary Judgment.  (*See* Doc. # 83 at 7-9).  As such, summary judgment on breach can lie in favor of the Bells with respect to Kokosing's dumping of contaminated fill on the Bells' property.

But the question remains as to damages.  Kokosing has argued fervently that the Bells' lack of evidence as to damages precludes summary judgment on the entire claim (*id.* at 8), and the Bells argue that the Court should conduct a trial on damages.  (Doc. # 81-1 at 17).  Kokosing relies upon *Barnett*, in which the Kentucky Court of Appeals states that a contract claim fails where the plaintiff "has not put forth any evidence that he suffered any damages."  233 S.W.3d at 728.  Additionally, Kokosing tersely quips that "if anything, the landscaping it performed has likely increased the value of the [Bells']

---

[4]     Additionally, it is noteworthy that if it has any effect at all, Mr. Bells' striking would favor Kokosing's interpretation that it was not obligated to deliver 100,000 cubic yards of fill.

property." (Doc. # 83 at 8). However, Kokosing's statement is counterproductive, as it supports the Bells' position that issues of fact are present with respect to damages and the value of the Bells' property. However, it is nonetheless irrelevant, as the Bells' summary judgment motion stops short of damages. Kokosing's belief that an undisputed lack of damages would preclude a breach of contract claim is best addressed in its own Motion for Summary Judgment. Accordingly, the Bells' Motion for Summary Judgment is **granted** with respect to the existence of a contract and breach of that contract, and that claim will proceed to trial with respect to damages.

### 2.   *Kokosing's Motion for Summary Judgment (Doc. # 82)*

Kokosing has moved for summary judgment with respect to all remaining claims, including the claims for declaratory and injunctive relief, which were not addressed in the Bells' Motion for Summary Judgment. (*See* Doc. # 82). After considering the briefings on Kokosing's Motion, the Court concludes that Kokosing's Motion for Summary Judgment should be **granted in part and denied in part** for the aforementioned reasons.

### a.   **Fraudulent Misrepresentation**

On the fraudulent misrepresentation claim, Kokosing argues that it is entitled to summary judgment because it did not intend to mislead the Bells. (Doc. # 82 at 15). Kokosing cites an affidavit and accompanying expert report by Scott Recker[5] which it purports to show that "various entities failed to properly advise Kokosing who, in turn, reasonably relied on those [entities'] experts' representations as fact when communicating with [the Bells]." (*Id.* at 16). Kokosing states that neither David Bell nor Al Girdler, an employee of the hauling company, notified Kokosing about concerns related

---

[5]   The Bells have moved to exclude this expert report, which is addressed at part III.C of this Memorandum Opinion and Order.

to the fill material's contamination status, and that it had "no reason to suspect the advice it received was anything but accurate." (*Id.* at 17). Kokosing also points out that Chris Daugherty, a Kokosing employee, told David Bell that the fill material had been tested, and that Mr. Daugherty (and the company) "had no reason to believe this to be an untrue statement at the time[.]" (*Id.* at 18). In response, the Bells argue that the evidence suggests Kokosing knew or should have known that the fill material was contaminated. (Doc. # 84-1 at 21).

As previously stated, fraudulent misrepresentation, among other elements, requires a showing that the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity, and that the defendant intended to induce the plaintiff to act upon the misrepresentation. *Giddings & Lewis*, 348 S.W.3d at 747. Thus, to obtain summary judgment in its favor, Kokosing needs to show that no reasonable jury could find for the Bells on the undisputed evidence with respect to at least one of these elements. *See Sigler*, 532 F.3d at 483. Kokosing's arguments speak to the two elements provided above, but unfortunately, it has not carried its burden of showing no dispute of material fact.

More specifically, the Court sees the same issues that were present in analysis on the Bells' Motion for Summary Judgment: facts are in dispute with respect to Kokosing's state of mind and whether it knew or should have known the fill material's contamination status, and whether it had a motive to induce the Bells into taking the fill material. *See supra* part III.A.1.a. Kokosing's characterization that it did not know of the Bells' or of the truck drivers' concerns is in direct contradiction with the sworn testimony of Alan Girdler that he personally called Kokosing's superintendent to notify him about concerns with the

fill material.   (Doc. # 90 at 24).   As previously stated, "claims involving proof of a defendant's intent seldom lend themselves to summary disposition [except for] when the evidence is so one-sided that no reasonable person could decide the contrary."   *West Hills Farms*, 727 F.3d at 484 (internal quotations omitted).  Here, Kokosing has not carried its burden of showing that the facts are not in dispute, and the evidence is hardly one-sided.   Thus, summary judgment in favor of Kokosing on the Bells' fraudulent misrepresentation claim is **denied**.

### b.    Negligence *Per Se*

Kokosing is entitled to summary judgment on the negligence *per se* claim for the same reasons stated in the Court's analysis on the Bells' Motion for Summary Judgment. *See supra* part III.A.1.b.  Because it remains the law of the case that the Bells are not a part of the class of persons protected by the statutes they cite in support of this claim, no reasonable jury could find in their favor.   *See id.*   As such, summary judgment will be **granted** in Kokosing's favor on the Bells' negligence *per se* claim.

### c.    Intentional Trespass to Property

With respect to intentional trespass to property, Kokosing asserts that it is entitled to judgment as a matter of law because it acted on a reasonable mistake of fact, and not out of recklessness or intent.  (Doc. # 82 at 22).  Kokosing's arguments are the same as its arguments on fraudulent misrepresentation – that it relied on the representations of other companies in relaying to the Bells that the fill material was not contaminated.  (*Id.* at 22-23).   Those arguments fail for the same reasons that they failed with respect to fraudulent misrepresentation.   Disputed issues of material fact exist with regard to whether Kokosing acted intentionally or recklessly in directing its subcontractor to deposit

the fill material on the Bells' property.  As previously stated, Kokosing's state of mind – specifically whether it acted intentionally or recklessly – is a question of fact best left to a jury.  As a result, summary judgment cannot lie in its favor on this claim, and is **denied**.

### d. Breach of Contract

The Court has granted partial summary judgment in favor of the Bells with respect to their contract claim on breach, while leaving the issue of damages to proceed.  (*Supra* part III.A.1.d).  However, Kokosing has argued in its own Motion for Summary Judgment that on damages, no reasonable jury could find for the Bells because the Bells cannot provide evidence of recoverable damages.  (Doc. # 82 at 9).  If the Court granted summary judgment on damages in favor of Kokosing, the breach of contract claim would be effectively disposed.  In response, the Bells argue that they can provide evidence of diminution of their property value, in addition to damages stemming from the amount of fill received being less than 100,000 cubic yards.  (Doc. # 84-1 at 11-12).  In analyzing the Bells' Motion for Summary Judgment, the Court has previously reasoned that no breach occurred with respect to the amount of fill delivered, and that a breach occurred only with respect to the fill's contamination.  (*Supra* part III.A.1.d).  Thus, only the arguments on contract damages stemming from the contaminated fill remain relevant at this stage.

More specifically, Kokosing argues that the Bells cannot recover contract damages for loss or use of diminution of their property, for emotional distress, for additional maintenance costs, and for attorney's fees.  (*See generally* Doc. # 82).  Kokosing posits that in the absence of cognizable damages, the Bells' contract claim must fail.  However, with specific respect to the value of the Bells' property, the Court sees that a triable issue

20

of fact is present, and Kokosing's Motion for Summary Judgment with respect to contract damages is **denied**.

If Kokosing is to obtain summary judgment, it bears the burden of showing the absence of a genuine issue of material fact.   *Sigler*, 532 F.3d at 483.   In *Smith*, the Kentucky Supreme Court held that "[t]he amount of harm, if any, to the individual parcels, and the corresponding measure of actual or compensatory damages will depend upon the proof introduced at trial – an issue of fact."  226 S.W.3d at 57.  While *Smith* dealt with a tort claim, damage to the Bells' property value is a reasonable and foreseeable consequence of Kokosing's breach of its contract with the Bells, and to the extent that the Bells' property value was actually harmed by Kokosing's breach, the Bells can recover in contract.  *See Arete Ventures, Inc. v. Univ. of Ky.*, 619 S.W.3d 906, 915-16 (Ky. 2020) (discussing causation in contract damages).  Kokosing has broadly claimed that the Bells cannot show evidence of actual harm to their property (Doc. # 82 at 11), but the Bells have shown in their Response that there are several examples of potential harm.  (Doc. # 84-1).  Whether those examples cited by the Bells are credible enough to constitute actual harm is an issue of fact to be determined at trial.  Having failed to meet its burden

of showing an absence of any dispute of material fact, Kokosing cannot obtain summary judgment on contract damages.[6]  Summary judgment on this claim is therefore **denied**.

### e.    Declaratory and Injunctive Relief

Lastly, Kokosing has briefly addressed the Bells' demands for declaratory and injunctive relief, which the Bells did not address in their own Motion for Summary Judgment.  (Doc. # 82 at 23).  The Bells also did not respond to Kokosing's arguments in their Response to Kokosing's Motion.  (*See* Doc. # 84).  The Bells' request for declaratory and injunctive relief primarily relate to remediating the property.  (*See* Doc. # 27 at 78). Otherwise, they seek declarations that a valid contract exists, that Kentucky law governs, and that Kokosing be required to take steps to avoid future contamination incidents.  (*See id.*).  To the extent that the Bells seek the Court to require Kokosing to take specific steps in future contracts, the Court flatly declines the Bells' request.  Otherwise, a remediation plan has been carried out, and it has been established that a valid contract exists, and Kentucky law has been applied.  The Bells' requests are therefore moot, and because no reasonable jury could find in their favor, summary judgment on the claims for declaratory and injunctive relief will be accordingly granted in favor of Kokosing.

---

[6]    However, the Court's determination here remains consistent with its findings in ruling on Motions to Dismiss.  While the Bells cannot recover in contract and in tort for the breach, they can recover for injuries sustained by Kokosing's breach and its "subsequent representations that the fill material being deposited on [the Bells'] land was uncontaminated," as "these are two separate injuries."  (Doc. # 59 at 42).  Additionally, Kentucky's economic loss doctrine allows for "a party who has been aggrieved by fraudulent or malicious conduct which results in damages *that differ* from the damages sustained by reason of the breach of contract . . . to assert an independent claim for such fraudulent or malicious conduct[.]"  *Nami Res. Co., LLC v. Asher Land & Min., Ltd.*, 554 S.W.3D 323, 336 (Ky. 2018) (emphasis added).

The Bells mentioned this distinction in their Response to Kokosing's Motion for Summary Judgment, writing that "emotional distress, worry, and mental anxiety" stemmed specifically from Kokosing's alleged misrepresentations.  (Doc. # 84-1 at 22).  These types of non-contractual injuries would be compensable in tort, so long as they are shown to stem from the non-contractual conduct.

## B.    The Bells' Motion to Strike (Doc. # 95)

The Bells have moved to strike full copies of deposition transcripts filed in the record by Kokosing.  (Doc. # 95).  In support of this Motion, the Bells assert that Kokosing has filed the deposition transcripts "in a tardy and deceptive manner" to cure an alleged deficiency that it made in failing to file authentication pages along with excerpts of the depositions filed in support of Kokosing's briefings on summary judgment.  (*Id.* at 1 and 3).  The Court took notice of the Bells' raising of the apparent issue, but declined to address it in analysis on the summary judgment cross-motions, because as previously stated, "Rule 56 no longer draws a clear distinction between authenticated and unauthenticated evidence for purposes of summary judgment."  *Mangum*, 674 F. App'x at 537.  Nonetheless, the Bells endure to strike the transcripts, as they believe the transcripts were filed out of time and without proper leave of court.  (Doc. # 95 at 4).

Kokosing has responded to state that the Bells' Motion to Strike is "ill-conceived and meritless" and "betrays a poor grasp of the Federal Rules of Civil Procedure[.]"  (Doc. # 96 at 1).  Kokosing also points out examples of what it states to be violations of the Local Rules by the Bells.  (*Id.* at 5).  In replying, the Bells have attached email correspondence between the parties' lawyers which seems to reveal the root of the dispute: one lawyer told another that he would not file the transcripts, and then he did file them.  (Doc. # 97-1 at 1).

In short, the Court is not interested in resolving disputes between lawyers that have no relation to the legal questions involved in the case.  The Local Rules are silent as to whether full copies of deposition transcripts should be filed in the record, and likely for the

23

same reason the Court will deny the Bells' Motion to Strike – because including them in the record makes no matter.  Accordingly, the motion is **denied**.

    **C.**    **The Bells' Motion to Exclude Testimony and Expert Report of Scott Recker (Doc. # 80)**

Lastly, the Bells have moved to exclude the testimony and report of expert witness Scott Recker, upon whose testimony Kokosing relied in its Motion for Summary Judgment.  (Doc. # 80).  The Motion seeks to prohibit Kokosing from allowing Mr. Recker to testify at trial, and "to otherwise prohibit Kokosing from using Recker's expert report for any other purpose in the trial of this case."  (*Id.* at 1).  To the extent that the Bells seek to exclude Mr. Recker's report from consideration at summary judgment, their Motion is denied.  Furthermore, to the extent that they seek to prohibit Mr. Recker from testifying at trial as a *Daubert* challenge, their motion is denied without prejudice for the aforementioned reasons.  With respect to specific objections to particular testimony offered by Mr. Recker, the Court will defer ruling on specific pieces of testimony until Motions in Limine are filed.

FRE 702, as modified by *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), states that expert testimony is admissible so long as (1) the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  The Sixth Circuit has clarified that in assessing admissibility of expert opinions, the court should assess reliability, and not credibility or accuracy, as the inquiry is "not to determine whether [the opinion] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say,

24

unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Here, Mr. Recker is an environmental consultant retained by Kokosing to testify as to Kokosing's practices with respect to the contaminated fill material that ended up on the Bells' property. (Doc. # 80-1 at 10). Mr. Recker will testify that Kokosing arranged for the transportation of the fill material "based on the mistaken characterization" by other parties, which supports Kokosing's arguments that it acted in good faith and in reliance on the attestations of other entities. (*Id.* at 11). Mr. Recker's conclusions are based on his review of documents, as well as information provided to him by interviews with Kokosing representatives. (*Id.*).

According to the Bells, Mr. Recker's conclusions are generally "unreliable, confusing, and contrary to the facts of this case." (Doc. # 80 at 8). They also point out that the report "does not address a relevant fact of consequence in this lawsuit." (*Id.* at 10). However, most, if not all, of the Bells' objections to Mr. Recker's testimony are based on simple disagreement with his conclusions. As previously discussed at length, it is well established that the Bells and Kokosing disagree on whether Kokosing knew or should have known that the fill material was contaminated. It should be expected that Kokosing will retain witnesses in support of their position on that issue. The Bells have not provided any evidence to suggest that Mr. Recker's report does not "rest upon a reliable foundation" to the degree that it should be broadly excluded by a *Daubert* challenge at this stage.

Nonetheless, however, the Court declines to rule on the individual assertions made in the report, as in ruling on summary judgment, those specific rulings are neither needed

nor assistive.  Accordingly, the Bells' Motion to Exclude is **denied without prejudice**, and rulings on individual assertions will be deferred for reconsideration during the filing of Motions in Limine.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    The Bells' Motion for Summary Judgment (Doc. # 81) is **GRANTED IN PART and DENIED IN PART**, being granted as to the breach of contract claim on the existence of a contract and a breach thereof, and being denied as to all other claims and elements;

(2)    Kokosing's Motion for Summary Judgment (Doc. # 82) is **GRANTED IN PART and DENIED IN PART**, being granted as to the claims of negligence *per se* and declaratory/injunctive relief, and being denied as to all other claims;

(3)    The Bells' claims for negligence *per se* and declaratory/injunctive relief, as well as corresponding portions of the Amended Complaint (Doc. # 27) are **DISMISSED WITH PREJUDICE;**

(4)    This matter shall proceed to trial on the breach of contract claim to determine damages only, and on the fraudulent misrepresentation and intentional trespass to land claims with respect to all elements;

(5)    The Bells' Motion to Strike (Doc. #95) is **DENIED**;

(6)    The Bells' Motion to Exclude the Testimony of Scott Recker (Doc. # 80) is **DENIED WITHOUT PREJUDICE**, and specific objections to the substance of Mr. Recker's testimony shall be taken up prior to trial; and

(7)      This matter is scheduled for a **telephonic status conference** on **April 15, 2022 at 11:00 a.m.**   The parties must dial in to this conference **at least five (5) minutes before the scheduled time by following these steps**:

- Call AT&T Teleconferencing at 1-877-336-1839; and

- Enter Access Code 8854898.

This 29th day of March, 2022.

Signed By:

*David L. Bunning*

**United States District Judge**

K:\DATA\ORDERS\Cov2019\19-53 MSJ.docx